FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENNIS H.,[1] | No. 1:20-cv-03202-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | ECF Nos. 14, 19 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 14, 19.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

416.920(a). Further, a district court "may not reverse an ALJ's decision on

account of an error that is harmless." *Id.* An error is harmless "where it is

inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115

(quotation and citation omitted). The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S.

396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

ORDER - 3

1  substantial gainful work which exists in the national economy."  42 U.S.C. §

2  1382c(a)(3)(B).

3  The Commissioner has established a five-step sequential analysis to

4  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

5  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

6  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

7  gainful activity," the Commissioner must find that the claimant is not disabled.  20

8  C.F.R. § 416.920(b).

9  If the claimant is not engaged in substantial gainful activity, the analysis

10  proceeds to step two.  At this step, the Commissioner considers the severity of the

11  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

12  "any impairment or combination of impairments which significantly limits [his or

13  her] physical or mental ability to do basic work activities," the analysis proceeds to

14  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

15  this severity threshold, however, the Commissioner must find that the claimant is

16  not disabled.  *Id.*

17  At step three, the Commissioner compares the claimant's impairment to

18  severe impairments recognized by the Commissioner to be so severe as to preclude

19  a person from engaging in substantial gainful activity.  20 C.F.R. §

20  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

ORDER - 4

1  enumerated impairments, the Commissioner must find the claimant disabled and

2  award benefits.  20 C.F.R. § 416.920(d).

3       If the severity of the claimant's impairment does not meet or exceed the

4  severity of the enumerated impairments, the Commissioner must pause to assess

5  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6  defined generally as the claimant's ability to perform physical and mental work

7  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9       At step four, the Commissioner considers whether, in view of the claimant's

10  RFC, the claimant is capable of performing work that he or she has performed in

11  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12  capable of performing past relevant work, the Commissioner must find that the

13  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14  performing such work, the analysis proceeds to step five.

15       At step five, the Commissioner considers whether, in view of the claimant's

16  RFC, the claimant is capable of performing other work in the national economy.

17  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18  must also consider vocational factors such as the claimant's age, education and

19  past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On May 22, 2018, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of May 1, 2018.[3]  Tr. 15, 73, 166-74.  The application was denied initially, and on reconsideration. Tr. 100-08, 112-18.  Plaintiff appeared before an administrative law judge (ALJ) on June 2, 2020. Tr. 36-72.  On June 22, 2020, the ALJ denied Plaintiff's claim.  Tr. 12-31.

---

[3] Plaintiff previously applied for Social Security Disability benefits on April 5, 2012; the application was denied on initial and reconsideration and resulted in an ALJ denial on July 27, 2015.  Tr. 75.  On January 24, 2017, the Appeals Council declined to review the decision.  *Id.*

ORDER - 6

1   At step one of the sequential evaluation process, the ALJ found Plaintiff has

2   not engaged in substantial gainful activity since May 22, 2018.  Tr. 17.  At step

3   two, the ALJ found that Plaintiff has the following severe impairments: depressive

4   disorder and substance use disorder.  *Id.*

5   At step three, the ALJ found Plaintiff does not have an impairment or

6   combination of impairments that meets or medically equals the severity of a listed

7   impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform

8   medium work with the following limitations:

> [Plaintiff] is capable of engaging in unskilled, repetitive, routine tasks
> in two-hour increments.  He will have no contact with the public.  He
> is capable of working in proximity to, but not in coordination with,
> co-workers.  He will have occasional contact with supervisors.  He
> will be off task at work 10% more than [an] average worker in the
> workplace.  He will be absent from work one and one half days per
> month.

Tr. 19.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 25.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as kitchen helper, hand packager, and fish cleaner.  *Id.*  Therefore, the ALJ

concluded Plaintiff was not under a disability, as defined in the Social Security

Act, from the date of the application through the date of the decision.  Tr. 26.

ORDER - 7

On September 17, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-five analysis;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ properly evaluated the medical opinion evidence; and

4. Whether the ALJ conducted a proper step-two analysis.

ECF No. 14 at 2.

## DISCUSSION

### A. Step Five

Plaintiff argues the RFC set forth by the ALJ is disabling and the ALJ erred in his step five analysis. ECF No. 14 at 3-5. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete

ORDER - 8

hypotheticals posed to a vocational expert.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id*.

Here, while the expert initially testified that the three representative jobs could be performed with the hypothetical RFC posed by the ALJ, including the limitation to occasional contact with supervisors, Tr. 66, when asked follow-up

ORDER - 9

1  questions, the expert testified that at least the initial training period requires more

2  than occasional contact with supervisors, Tr. 69-70.  The expert also testified that it

3  is important during the training/probationary period to not demonstrate any

4  consistent problems.  *Id.*  This testimony indicates that Plaintiff's RFC may be

5  inconsistent with the ability to complete a standard training period of a job, as the

6  training typically requires more frequent supervisor contact than Plaintiff is

7  capable of tolerating.  Defendant argues Plaintiff could still perform the work on a

8  regular and consistent basis after the training period, ECF No. 19 at 18, however, it

9  is unclear from the expert's testimony whether they believed someone with

10  Plaintiff's RFC would be terminated during the training period or if they could

11  perform the work.

12      Additionally, the ALJ posed an incomplete hypothetical to the vocational

13  expert.  The ALJ posed the following hypothetical to the expert: "an individual

14  whose maximum physical exertional capacity is medium, who is capable of

15  engaging in unskilled, repetitive, routine tasks in two-hour increments, who will

16  have no contact with the public, who is capable of working in proximity to but not

17  in coordination with coworkers, who will have occasional contact with

18  supervisors."  Tr. 66.  In response, the vocational expert testified the hypothetical

19  person could perform the jobs of kitchen helper, hand packager, and fish cleaner.

20  *Id.*  Plaintiff's counsel then asked the expert what the typical employer's tolerance

for absenteeism is, and the expert testified one and a half days per months.  Tr. 70.

The expert also testified that regularly being more than 10 percent off task, as

compared to the average employee, would rule out unskilled work.  *Id.*  The ALJ

incorporated the absenteeism and off-task limitation into the RFC.  Tr. 19.

However, the expert was never asked if an individual could perform the listed jobs

if they had the original RFC in addition to being off-task 10 percent more than the

average worker and would be absent from work one and one-half days per month.

*See* Tr. 66-71.  The expert testified that 10 percent off-task, and absenteeism of one

and one-half days per month would each independently be tolerated, but it is

unclear from the record whether such limitations when combined with one another,

and the original RFC, would be tolerated by an employer or would cumulatively be

disabling.

Given the conflicts and unclear nature of the expert's testimony, the ALJ's

step five finding is not supported by substantial evidence.  On remand, the ALJ is

instructed to take new vocational expert testimony and resolve any conflicts in the

expert's testimony.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 14 at 5-10.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

ORDER - 11

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.

Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)).  "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.

Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 12

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 20.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 20-21.  An ALJ may not discredit a claimant's

ORDER - 13

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a

relevant factor, along with the medical source's information about the claimant's

pain or other symptoms, in determining the severity of a claimant's symptoms and

their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

The ALJ found Plaintiff's symptom claims were out of proportion with the

typically benign mental status findings. Tr. 21. While Plaintiff occasionally had

some documented abnormalities, he was generally observed as having normal

appearance, behavior, mood, affect, speech, thoughts, perception, orientation,

cognition, intelligence, and psychomotor activity. *Id.* Despite Plaintiff's

allegation of a learning disability, Tr. 75, his intellectual testing was within average

limits, Tr. 21, 276. Plaintiff's DSHS and consultative examinations were largely

normal. Tr. 21, 256-57, 275-76. As discussed *infra,* there is minimal evidence of

Plaintiff's mental functioning due to his lack of treatment. The limited mental

health records from the period when Plaintiff was incarcerated largely document

normal mental status findings. *See* Tr. 292, 295, 302, 315, 332-33, 376, 394.

1     Plaintiff argues the objective medical evidence is consistent with his

2  allegations and cites to a few examinations that contained some abnormalities and

3  Plaintiff's PHQ-9 scores.  ECF No. 14 at 7 (citing Tr. 258, 274, 295, 315, 332, 397,

4  415-16, 451).  Despite the infrequent abnormalities, the ALJ reasonably found the

5  mental status findings were generally normal.  The Court also notes that several of

6  the records cited to by Plaintiff are appointments during which Plaintiff reported he

7  was actively using heroin, oxycodone, methamphetamine, alcohol, and marijuana,

8  as recently as the day before the appointment.  Tr. 254, 258-59, 273-74, 415-16.

9  While Plaintiff cites to evidence of hallucinations, ECF No. 14 at 7, the record

10  reflects Plaintiff was using heroin, methamphetamine, marijuana and alcohol, and

11  the provider noted "drug induced psychosis" was discussed during the

12  appointment.  Tr. 416.  At an emergency department visit that Plaintiff cited to as

13  evidence he was disheveled, ECF No. 14 at 7 (citing Tr. 451), Plaintiff was

14  diagnosed with methamphetamine use, Tr. 451-54.  On this record, the ALJ

15  reasonably found the objective medical evidence was inconsistent with Plaintiff's

16  symptom claims.  This was a clear and convincing reason, along with the other

17  reasons offered, to reject Plaintiff's allegations.

18     *2.  Lack of Treatment*

19     The ALJ found Plaintiff's symptom claims were inconsistent with his lack of

20  mental health treatment.  Tr. 20-21.  An unexplained, or inadequately explained,

ORDER - 15

failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrook*, 240 F.3d at 1165-66; *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen*, 100 F.3d at 1465.

The ALJ found that despite his complaints of disabling mental health symptoms, Plaintiff sought little treatment for his symptoms. Tr. 20 (citing, e.g., Tr. 272-73, 293, 296, 301, 414). Plaintiff was not in counseling nor on any mental health medications in June 2018, Tr. 291-93, reported he had never been in

counseling and was not on any mental health medications in January 2019, Tr. 272-73, and in April 2020, Plaintiff continued to not be on any mental health medications, Tr. 414. Plaintiff first argues there is no evidence his symptoms would improve with treatment, as Dr. Olmer opined Plaintiff's limitations would last 12-24 months even with treatment. ECF No. 14 at 6 (citing Tr. 256). However, the ALJ gave reasons supported by substantial evidence to reject Dr. Olmer's opinion, as discussed *infra*.

Plaintiff also argues the ALJ failed to consider his barriers to treatment, including Plaintiff's difficulty leaving his home, his loss of his primary care provider, his periods of incarceration when he requested mental health services, and periods when Plaintiff was unsure if he had medical coverage. ECF No. 14 at 6. However, despite Plaintiff's allegations that he had difficulty leaving his home to obtain treatment, Plaintiff reported selling drugs in August 2018, and reported being able to go to stores and socialize with friends, indicating Plaintiff was able to leave his home and interact with others. Tr. 254, 256, 275, 282. There is documentation of Plaintiff reporting anxiety and wanting to see a mental health staff while incarcerated, but minimal evidence of treatment, and largely normal mental status examinations. *See* Tr. 292, 294-295, 302, 315, 317, 332-33, 376, 394, 396. Plaintiff does not cite to any records where Plaintiff reported difficulties accessing treatment. Plaintiff reported he lost his primary care physician because

his provider thought Plaintiff was taking too many pills, but Plaintiff does not offer an explanation as to why he did not seek a new provider.  Tr. 60.  Plaintiff testified he was not sure if he had insurance at the time of his hearing, but admitted he previously had insurance, and offered no explanation as to why he did not seek mental health treatment during a time he knew he had insurance.  Tr. 60-61.  On this record, the ALJ reasonably found Plaintiff's allegations were inconsistent with his lack of treatment.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about his symptoms and substance use.  Tr. 21.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

The ALJ found Plaintiff made inconsistent statements regarding his symptoms and impairments.  Tr. 21.  While Plaintiff testified that he has had seizures, Plaintiff reported to a medical provider that he had never had a seizure.

ORDER - 18

1    *Id.* (citing Tr. 401).  Plaintiff reported at a consultative examination that he has had

2    seizures since 2004, Tr. 282, and stated in June 2018 he was being treated for

3    seizures, Tr. 304, however in October 2018, January 2019, and April 2019, he

4    reported he had never been treated for seizures, Tr. 354, 362, 371, 374, 380, 383,

5    390.  At his consultative examination in January 2019, Plaintiff also reported

6    chronic low back pain that causes him limitations, Tr. 281, but when being cleared

7    to work while incarcerated in October 2018, Plaintiff was found to have no back

8    problems, restrictions in activities, nor treatment for any chronic conditions, Tr.

9    371.

10         The ALJ also found Plaintiff gave inconsistent statements about his

11    substance use.  Tr. 21.  The ALJ noted that Plaintiff testified he had not used

12    substances for one year prior to his June 2020 hearing, but he told a medical

13    provider two months prior to the hearing that he was currently using drugs,

14    including heroin, methamphetamine, marijuana, and alcohol.  *Id.* (citing Tr. 416).

15    The record cited by the ALJ is dated September 2018.  Tr. 415-16.  However, any

16    error in the ALJ's erroneous analysis of Plaintiff's reports regarding his substance

17    use is harmless, as the ALJ gave other supported reasons to reject Plaintiff's

18    symptom claims, for the reasons discussed herein.  *See Molina*, 674 F.3d at 1115.

19    The Court also notes multiple other inconsistencies in Plaintiff's statements, such

20    as his testimony that he has never sold drugs, Tr. 49, despite his reports to Dr.

ORDER - 19

Olmer that he was selling drugs in 2018, Tr. 256, his report to Dr. Shadrach that he

sold drugs while in school, Tr. 273, and his history of arrests for narcotic

trafficking, Tr. 274.

### 4. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with his

symptom claims. Tr. 22. The ALJ may consider a claimant's activities that

undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a

substantial part of the day engaged in pursuits involving the performance of

exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff's activities of daily living were inconsistent with his

allegations of disabling limitations. Tr. 22. While Plaintiff alleges difficulties

leaving his home and interacting with others, he has reported going shopping on

his own, spending time with others daily, maintaining a relationship with a girl

friend for portions of the relevant period, and socializing with friends. *Id.*, Tr. 212-

15, 273, 275.  Plaintiff reported fishing, four-wheeling, playing horseshoes, and antique shopping.  Tr. 275.  Plaintiff also reported no issues with personal care and being able to use public transit.  Tr. 22, 213-14.

Plaintiff argues the ALJ failed to identify inconsistencies between his allegations and his activities of daily living.  ECF No. 14 at 8-9.  However, the ALJ reasonably found Plaintiff's reported ability to go out alone, use public transit, socialize regularly, and maintain a relationship, were inconsistent with his reported difficulty due to being overwhelmed in public and challenges being around more than three people at a time.  Tr. 20, 22.  The Court also notes that the record as a whole is consistent with the ALJ's finding.  While Plaintiff alleges he became disabled in May 2018, the medical records document Plaintiff selling drugs in August 2018, Tr. 256, working in the kitchen while incarcerated for several months in 2018, Tr. 359, and working repairing computers and making up to $1,000 per month in January 2019, Tr. 277.  This was a clear and convincing reason to reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these grounds.

### C. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his consideration of the opinions of E. Shadrach, Psy.D.; and Steven Olmer, Psy.D.  ECF No. 14 at 10-19.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate

ORDER - 21

1  medical opinion evidence. *Revisions to Rules Regarding the Evaluation of*

2  *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

3  C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give

4  any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*,

5  2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

6  416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all

7  medical opinions or prior administrative medical findings from medical sources.

8  20 C.F.R. § 416.920c(a) and (b). The factors for evaluating the persuasiveness of

9  medical opinions and prior administrative medical findings include supportability,

10  consistency, relationship with the claimant (including length of the treatment,

11  frequency of examinations, purpose of the treatment, extent of the treatment, and

12  the existence of an examination), specialization, and "other factors that tend to

13  support or contradict a medical opinion or prior administrative medical finding"

14  (including, but not limited to, "evidence showing a medical source has familiarity

15  with the other evidence in the claim or an understanding of our disability

16  program's policies and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-

17  (5).

18      Supportability and consistency are the most important factors, and therefore

19  the ALJ is required to explain how both factors were considered. 20 C.F.R. §

20  416.920c(b)(2). Supportability and consistency are explained in the regulations:

ORDER - 22

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether the "clear and convincing" and "specific and legitimate" standards still apply.  ECF No. 14 at 10-12; ECF No. 19 at 10-11.  "It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards." *Gary T. v. Saul*, No.

EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

(W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer

to the new regulations, even where they conflict with prior judicial precedent,

unless the prior judicial construction 'follows from the unambiguous terms of the

statute and thus leaves no room for agency discretion.'" *Gary T.,* 2020 WL

3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet*

*Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d

Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

unless 'they exceeded the Secretary's authority [or] are arbitrary and

capricious.'").

        There is not a consensus among the district courts as to whether the "clear

and convincing" and "specific and legitimate" standards continue to apply.  *See,*

*e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

Nov. 10, 2020) (applying the specific and legitimate standard under the new

regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

regulations displace the treating physician rule and the new regulations control);

1    *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at *4-6 (N.D.

2    Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and

3    legitimate nor clear and convincing standard).  This Court has held that an ALJ did

4    not err in applying the new regulations over Ninth Circuit precedent, because the

5    result did not contravene the Administrative Procedure Act's requirement that

6    decisions include a statement of "findings and conclusions, and the reasons or basis

7    therefor, on all the material issues of fact, law, or discretion presented on the

8    record."  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL

9    4071863, at *5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the

10   Court's analysis in this matter would differ in any significant respect under the

11   specific and legitimate standard set forth in *Lester*, 81 F.3d at 830-31.

12       *1.  Dr. Shadrach*

13       On January 6, 2019, Dr. Shadrach, an examining psychologist, rendered an

14   opinion on Plaintiff's functioning.  Tr. 272-79.  Dr. Shadrach diagnosed Plaintiff

15   with substance-induced depressive disorder, moderate/severe, with anxious

16   distress; alcohol use disorder, in early remission; stimulant (meth) use disorder;

17   and opioid (heroin) use disorder.  Tr. 277.  Dr. Shadrach opined Plaintiff can

18   complete simple repetitive tasks; he may struggle to follow moderately complex

19   instructions; Plaintiff would be able to understand and follow instructions from his

20   supervisor; Plaintiff would benefit from short concrete directives; his immediate

ORDER - 25

memory for simple concrete information is satisfactory; his ability to retain and

recall information after brief interference is impaired; retention and recall of long-

term information are poor; sustained concentration and persistence is limited;

nonverbal reasoning with visual cues and social interaction and interpersonal

relationships are "good"; Plaintiff may walk off the job if he becomes agitated; the

ability to maintain concentration/persistence in a typical work setting with a 40-

hour workweek would likely be impacted by his symptoms; learning new skills

may be impacted by his symptoms; Plaintiff would likely maintain good

attention/persistence in jobs with limited conceptual demands, repetitive, hands-on,

and with self-evident demands; and his ability to maintain

persistence/concentration in a part-time setting is attainable.  Tr. 277-79.  The ALJ

found the opinion was somewhat persuasive.  Tr. 24.

First, the ALJ found Dr. Shadrach's opinion did not contain vocationally

specific limitations detailing the most Plaintiff is capable of.  *Id.*  The more

supporting explanations presented by the provider to support their opinion, the

more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(1).  Dr. Shadrach opined

Plaintiff "may" walk off the job if he became agitated, and Plaintiff's "limited" or

"impaired" in some areas, such as his ability to sustain concentration and

persistence.  Tr. 24, 277-79.  The ALJ found such limitations are not framed in

vocationally specific terms, and do not provide an explanation as to the most

ORDER - 26

Plaintiff is capable of doing.  Tr. 24.  Plaintiff argues Dr. Shadrach's opinion

contains specific limitations related to Plaintiff's ability to sustain a normal work

schedule.  ECF No. 14 at 13-14.  However, Dr. Shadrach did not explain the

frequency Plaintiff would miss work, nor the frequency his ability to sustain/persist

would be impaired.  *See* Tr. 277-79.  While Dr. Shadrach opined Plaintiff's ability

to sustain persistence and concentration for a 40-hour workweek would "likely be

impacted," Tr. 279, she did not specify how his ability would be impacted.  Dr.

Shadrach opined part-time work is attainable for Plaintiff, *id.*, but did not indicate

if part-time work is the most Plaintiff is capable of performing.  The ALJ

reasonably found Dr. Shadrach's opinion largely did not contain specific functional

limitations.

Second, the ALJ found a portion of Dr. Shadrach's opinion was primarily

based on Plaintiff's self-report.  Tr. 24.  As supportability is one of the most

important factors an ALJ must consider when determining how persuasive a

medical opinion is, 20 C.F.R. § 416.920c(b)(2), a medical provider's reliance on a

Plaintiff's unsupported self-report is a relevant consideration when determining the

persuasiveness of the opinion.  The ALJ noted that Plaintiff reported he had

previously walked off the job at past jobs and found Dr. Shadrach's opinion that

Plaintiff may walk off the job due to agitation appeared to be based on Plaintiff's

self-report, as Plaintiff was able to resist the impulse to walk out of the

ORDER - 27

examination despite getting frustrated with the examination.  Tr. 24.  Plaintiff argues Dr. Shadrach's opinion was not based on Plaintiff's self-report but rather Plaintiff's apparent frustration during the examination.  ECF No. 14 at 14. However, Dr. Shadrach stated Plaintiff had good social skills and resisted the impulse to walk away during the examination despite expressed frustration, but in the work place he "may walk off the job if he becomes agitated."  Tr. 279.  Dr. Shadrach did not elaborate any further on why she thought Plaintiff may walk off the job due to agitation.  During the examination, Plaintiff reported he was previously fired for walking off the job.  Tr. 273.  Given the lack of objective evidence that Plaintiff would walk out of work, and a lack of further explanation from Dr. Shadrach, the ALJ reasonably found the opinion was based on Plaintiff's self-report.

Third, the ALJ found Dr. Shadrach's opinion was inconsistent with the record as a whole.  Tr. 24.  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  While Dr. Shadrach opined Plaintiff had multiple limitations, the ALJ found the record as a whole, including Dr. Shadrach's examination, generally documented normal mental status findings.  Tr. 24 (citing, e.g., Tr. 263, 267, 273-

ORDER - 28

74, 292, 295).  As discussed *supra,* the medical records document occasional

abnormalities, but most mental status examinations document largely normal

findings.  The ALJ reasonably found Dr. Shadrach's opinion was not supported by

the record as a whole.

Further, Plaintiff has not demonstrated that any error in rejecting Dr.

Shadrach's opinion is harmful.  Dr. Shadrach diagnosed Plaintiff with substance-

related disorders and did not diagnose Plaintiff with any other mental health

impairments.  Dr. Shadrach diagnosed Plaintiff with substance-induced depressive

disorder, moderate/severe, with anxious distress; alcohol use disorder, in early

remission; stimulant (meth) use disorder; and opioid (heroin) use disorder.  Tr.

277.  Thus, Dr. Shadrach's opinion reflects limitations caused entirely by

substance-related impairments.  The ALJ reasonably rejected Dr. Shadrach's

opinion, and found that even with substance use, Plaintiff is not disabled.  Tr. 24.

However, even if Dr. Shadrach's opinion was credited, it would at most support a

finding that DAA is a material contributing factor to Plaintiff's disability.  *See* 20

C.F.R. § 416.935(b)(2); *Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL

8731796, at *8 (D. Or. July 25, 2016).  As such, any error in rejecting Dr.

Shadrach's opinion would be harmless.  *See Molina*, 674 F.3d at 1115.

ORDER - 29

1      *2. Dr. Olmer*

2      On August 29, 2018, Dr. Olmer, an examining psychologist, rendered an

3   opinion on Plaintiff's functioning.  Tr. 253-57.  Dr. Olmer diagnosed Plaintiff with

4   severe opioid use disorder and severe amphetamine use disorder.  Tr. 255.  Dr.

5   Olmer stated Plaintiff has social anxiety as a symptom, but without further clarity

6   on the impact of Plaintiff's substance use on his social anxiety, he cannot diagnose

7   social anxiety.  Tr. 254.  Dr. Olmer opined Plaintiff has moderate limitations in his

8   ability to understand, remember, and persist in tasks by following detailed

9   instructions, perform routine tasks without special supervision, adapt to changes in

10  a routine work setting, and ask simple questions or request assistance; marked

11  limitations in his ability to perform activities within a schedule, maintain regular

12  attendance, and be punctual within customary tolerances without special

13  supervision, communicate and perform effectively in a work setting, maintain

14  appropriate behavior in a work setting, and set realistic goals and plan

15  independently; severe limitations in his ability to complete a normal

16  workday/workweek without interruptions from psychologically-based symptoms;

17  and Plaintiff otherwise has no to only mild limitations in the remaining areas of

18  functioning.  Tr. 255.  He opined Plaintiff overall has a marked severity rating, and

19  Plaintiff's limitations are primarily the result of substance use disorder, but the

20  limitations would persist following 60 days of sobriety, and the limitations were

ORDER - 30

1  expected to last 12 to 24 months with treatment.  *Id.*  The ALJ found Dr. Olmer's

2  opinion was not persuasive.  Tr. 23.

3      First, the ALJ found Dr. Olmer did not provide specific rationale for his

4  opinion.  *Id.*  Supportability is one of the most important factors an ALJ must

5  consider when determining how persuasive a medical opinion is.  20 C.F.R. §

6  416.920c(b)(2).  The more relevant objective evidence and supporting explanations

7  that support a medical opinion, the more persuasive the medical opinion is.  20

8  C.F.R. § 416.920c(c)(1).  Dr. Olmer's opinion largely consists of checked mark

9  boxes.  Tr. 255-56.  While he conducted an examination, Dr. Olmer did not set

10  forth any explanations correlating the examination findings with his opinion that

11  Plaintiff has multiple marked and one severe limitation.  Tr. 253-57.  Further,

12  Plaintiff's mental status examination was entirely normal, as discussed *infra.*  Tr.

13  256-57.  Plaintiff argues Dr. Olmer's opinion is supported by his notes, as Plaintiff

14  reported difficulties with large groups, sleep, and adapting/managing himself, and

15  Plaintiff's PHQ-9 score was 17.  ECF No. 14 at 18.  However, the notes do not

16  provide any explanation for the marked to severe limitations.  The ALJ reasonably

17  found Dr. Olmer did not support his opinion with an explanation.

18      Second, the ALJ found Dr. Olmer's opinion amounted to a conclusion that

19  Plaintiff cannot work, which is an issue reserved to the Commissioner.  Tr. 23.

20  The ALJ is not required to address statements on issues reserved to the

1  Commissioner.  20 C.F.R. § 416.920b(c)(3).  Dr. Olmer set forth opinions

2  regarding specific functional limitations, and not just an opinion that Plaintiff

3  cannot work.  However, any error in finding Dr. Olmer's opinion addressed an

4  issue reserved to the Commissioner is harmless as the ALJ gave other supported

5  reasons to reject the opinion.  *See Molina*, 674 F.3d at 1115.

6      Third, the ALJ found Dr. Olmer's opinion was inconsistent with his own

7  examination.  Tr. 23.  Supportability is one of the most important factors an ALJ

8  must consider when determining how persuasive a medical opinion is.  20 C.F.R. §

9  416.920c(b)(2).  The more relevant objective evidence and supporting explanations

10 that support a medical opinion, the more persuasive the medical opinion is.  20

11 C.F.R. § 416.920c(c)(1).  On examination, Plaintiff was appropriate, cooperative,

12 and calm, with clear speech, and normal thoughts, orientation, perception,

13 memory, fund of knowledge, concentration, abstract thought, and

14 insight/judgment.  Tr. 256-57.  Given the entirely normal examination findings, the

15 ALJ reasonably found Dr. Olmer's opinion was inconsistent with his examination.

16     Fourth, the ALJ found Dr. Olmer's opinion was inconsistent with the record

17 as a whole.  Tr. 23-24.  Consistency is one of the most important factors an ALJ

18 must consider when determining how persuasive a medical opinion is.  20 C.F.R. §

19 416.920c(b)(2).  The more consistent an opinion is with the evidence from other

20 sources, the more persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  As

ORDER - 32

discussed *supra,* the record as a whole, including Dr. Olmer's examination,

documents generally normal mental status findings.  As such, the ALJ reasonably

found Dr. Olmer's opinion was inconsistent with the record as a whole.

Further, Plaintiff has not demonstrated that any error in rejecting Dr.

Olmer's opinion is harmful.  Dr. Olmer only diagnosed Plaintiff with substance-

related disorders and did not diagnose Plaintiff with any other mental health

impairments.  Dr. Olmer diagnosed Plaintiff with severe opioid use disorder and

severe amphetamine use disorder.  Tr. 255.  Thus, Dr. Olmer's opinion reflects

limitations caused entirely by substance-related impairments.  The ALJ reasonably

rejected Dr. Olmer's opinion, and found that even with substance use, Plaintiff is

not disabled.  Tr. 23-24.  However, even if Dr. Olmer's opinion was credited, it

would at most support a finding that DAA is a material contributing factor to

Plaintiff's disability.  *See* 20 C.F.R. § 416.935(b)(2); *Chavez*, No. 3:14-cv-01178-

JE, 2016 WL 8731796, at *8.  As such, any error in rejecting Dr. Olmer's opinion

would be harmless.  *See Molina*, 674 F.3d at 1115.  Plaintiff is not entitled to

remand on these grounds.

**D. Step two**

Plaintiff contends the ALJ erred at step two by failing to identify his

headaches as a severe impairment.  ECF No. 14 at 19-21.  At step two of the

sequential process, the ALJ must determine whether claimant suffers from a

"severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques.  20 C.F.R. § 416.921.  In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  *Id.*

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and

dealing with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[4]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ noted Plaintiff had been diagnosed with headaches, but found it was not a severe impairment.  Tr. 17-18.  The ALJ found Plaintiff had multiple impairments, including headaches, which occurred only sporadically, were acute/transient, have been responsive to treatment, have not been corroborated by essentially unremarkable workup findings, or do not cause more than minimal workplace limitations.  Tr. 18.  Plaintiff was diagnosed with posterior cervical headaches, Tr. 285, which he reported occurred several times per week.  However, there is little objective evidence of headaches in the record.  There are a few

---

[4] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 35

medical records where Plaintiff denied headaches.  Tr. 443, 450, 461.  Plaintiff

reported he received an injection for his headaches in 2017, Tr. 282, but there is no

evidence of treatment for headaches during the relevant adjudicative period.  In

arguing his headaches are a severe impairment, Plaintiff relies on a single incident

at an examination when he reported headaches, and his testimony at the hearing

regarding headaches.  ECF No. 14 at 20.  Plaintiff argues the ALJ erred in failing

to accommodate his limitations due to headaches in the RFC, however Plaintiff

does not cite to any objective evidence of such limitations nor any medical

opinions that his headaches cause limitations.  *Id.* at 20-21.  As such, Plaintiff has

not met his burden in demonstrating a harmful error at step two.  Plaintiff is not

entitled to remand on these grounds.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits.

ECF No. 14 at 5, ECF No. 20 at 2-3.

"The decision whether to remand a case for additional evidence, or simply to

award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041,

1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

ORDER - 36

1  proper course, except in rare circumstances, is to remand to the agency for

2  additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

3  775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

4  cases, the Ninth Circuit has "stated or implied that it would be an abuse of

5  discretion for a district court not to remand for an award of benefits" when three

6  conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

7  credit-as-true rule, where (1) the record has been fully developed and further

8  administrative proceedings would serve no useful purpose; (2) the ALJ has failed

9  to provide legally sufficient reasons for rejecting evidence, whether claimant

10  testimony or medical opinion; and (3) if the improperly discredited evidence were

11  credited as true, the ALJ would be required to find the claimant disabled on

12  remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874

13  F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

14  the Court will not remand for immediate payment of benefits if "the record as a

15  whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759

16  F.3d at 1021.

17      Plaintiff urges remand for immediate benefits based on the step five error,

18  however the record is not fully developed, and additional vocational expert

19  testimony is necessary.  The vocational expert testified that being off task more

20  than 10 percent of the time more than an average worker is a disabling limitation,

ORDER - 37

Tr. 19, however the RFC set forth by the RFC only states Plaintiff would be off task 10 percent more than the average worker, Tr. 19, which is not a disabling limitation per the vocational expert's testimony.  The vocational expert was not asked a complete hypothetical that contains all of Plaintiff's limitations, and thus further testimony is necessary.

Further, the record as a whole creates serious doubt that Plaintiff is disabled. As discussed *supra,* the ALJ's rejection of Plaintiff's symptom claims and the medical opinion evidence is supported by substantial evidence, and there is significant evidence of Plaintiff using multiple substances, being incarcerated, and performing work activities for payment during the relevant adjudicative period. Plaintiff has also reported difficulty gaining employment due to his legal record, Tr. 253, and Plaintiff has never worked for an entire year earning substantial gainful activity, Tr. 178-79.

On remand, the ALJ is instructed to take new vocational expert testimony and reconsider the step five analysis.  If the new vocational expert testimony supports a finding of disability at step five, the ALJ is instructed to conduct a DAA materiality analysis.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 31, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 39